UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DEBORAH G. CULOTTA** | **CIVIL ACTION** |
| **VERSUS** | **No. 11-1561** |
| **SODEXO REMOTE SITES PARTNERSHIP** | **SECTION "I"** |

### ORDER AND REASONS

Before the Court is a motion[1] to dismiss filed by defendant, Sodexo Remote Sites Partnership ("Sodexo"). Plaintiff, Deborah G. Culotta ("Culotta"), opposes the motion.[2] For the assigned reasons, Sodexo's motion is **GRANTED IN PART** and **DENIED IN PART**.

### *BACKGROUND*

This case arises out of the same set of facts giving rise to an employment discrimination action Culotta previously filed against Sodexo in *Deborah G. Culotta v. Sodexo Remote Sites Partnership, et al.* ("*Culotta I*"), Civil Action No. 2:10-cv-2946. Culotta began her employment with Sodexo in 1983.[3] In April 2004, she advanced to the position of Human Resources ("HR") Director.[4] At the time of her promotion to HR Director, William Gabbey ("Gabbey") is alleged to have orally promised Culotta that she would receive the same annual salary as her predecessor, Wayne Davis ("Davis").[5] Culotta alleges that she never received an annual salary equal to Davis's even though, she alleges, she performed the same job duties.[6]

---

[1] R. Doc. No. 29.

[2] R. Doc. No. 32.

[3] R. Doc. No. 1, ¶ 7.

[4] *Id.* at ¶¶ 8-9.

[5] R. Doc. No. 1-2, ¶¶ 113-114.

[6] R. Doc. No. 1, ¶ 12.

In March 2008, Culotta was demoted to Training and Development Director.[7] Her successor, Vince Goodwine, became Senior HR Director.[8] Goodwine eventually transferred Culotta to the position of Employee Relations Manager, which Culotta claims had the same duties as her previous position.[9] Culotta alleges that she was finally forced to quit in September 2010 when Goodwine's successor, Todd Woodruff, knowing that she had a fear of water and that she could not work offshore, suddenly required that she begin working offshore.[10] Culotta alleges that the change in position and titles with the same duties as the HR director, along with "the sudden bogus need to go on the water," were intentionally designed to force her to retire based on her age and gender.[11]

On July 4, 2011, Culotta filed this lawsuit alleging violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as set forth in the charge she had filed with the Equal Employment Opportunity Commission ("EEOC").[12] Culotta also alleges that Sodexo is liable for fraud under Louisiana Civil Code articles 1915 and 2315 and that Sodexo refused to pay wages that she was

---

[7] *Id.* at ¶¶ 13-14.

[8] R. Doc. No. 1-2, ¶ 27.

[9] *Id.* at ¶¶ 27-32.

[10] *Id.* at ¶¶ 40-45.

[11] *Id.*

[12] *See* R. Doc. No. 1

owed in violation of state law.[13]  Sodexo filed this motion to dismiss the claims on the grounds that they are time-barred and otherwise fail to state a claim upon which relief may be granted.[14]

## *STANDARD OF LAW*

### I. Federal Rule of Civil Procedure 12(b)(6)

A district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted if the plaintiff has not set forth a factual allegation in support of his claim that would entitle him to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007); *Cuvillier v. Taylor,* 503 F.3d 397, 401 (5th Cir. 2007). As the Fifth Circuit explained in *Gonzalez v. Kay:*

> "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court recently expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* --- U.S. ---, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955, 167 L.Ed.2d 929). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

577 F.3d 600, 603 (5th Cir. 2009).

This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, a court must

---

[13] *Id.*

[14] *See* R. Doc. No. 29.

accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey,* 197 F.3d at 774; *Lowrey v. Tex. A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan,* 308 Fed. Appx. 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.,* 794 F.2d 967, 970 (5th Cir. 1986)).

## II.  Federal Rule of Civil Procedure 9(b)

Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). "The particularity requirement of Rule 9(b) also governs a conspiracy to commit fraud." *In Re Enron Corp. Sec.,* Derivative & "ERISA" *Litig.*, 540 F. Supp. 2d 759, 766 (S.D. Tex. 2007) (citation omitted). "Pleading fraud with particularity in this circuit requires 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.' " *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir.1997). In other words, "the who, what, when, and where must be laid out . . . ." *Id.* at 178.

"A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6)." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir.1997). "Rule 9(b) is an exception to Rule 8(a)'s simplified pleading that calls for a 'short and plain statement of the claim.' The particularity demanded by Rule 9(b) is supplemental to the Supreme Court's recent interpretation of Rule 8(a) requiring 'enough facts [taken as true] to state a claim to relief that is plausible on its face.' " *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir.2009) (quoting *Twombly*, 550 U.S. at 570). As the Fifth Circuit further explained:

4

> In cases of fraud, Rule 9(b) has long played [a] screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later. We apply Rule 9(b) to fraud complaints with "bite" and "without apology," [*Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir.1997)] but also aware that Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading. Rule 9(b) does not "reflect a subscription to fact pleading" [id.] and requires only "simple, concise, and direct" allegations of the "circumstances constituting fraud," which after *Twombly* must make relief plausible, not merely conceivable, when taken as true.

*Id.* at 185-86.

## DISCUSSION

### I. Statute of Limitations

Because Louisiana is a "deferral" state, Culotta had 300 days from an alleged act of discrimination to file a charge with the EEOC. *See Windhauser v. Bd. of Supervisors for La. State Univ. & Agr. and Mech. College*, 360 Fed. App'x. 562, 566 (5th Cir. Jan 12, 2010) (citing *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998)). Culotta filed her charge with the EEOC on November 8, 2010. As a result, Culotta's claims are time-barred to the extent that they occurred before the limitations period began 300 days before that date, or on January 12, 2010. Sodexo argues that this Court should, therefore, dismiss the claims relating to Culotta's promotion to the position of HR Director in May 2004, her change of position to the Training & Development Director in March 2008, her change of position to Employee Relations Manager in March 2009, her alleged failure to receive pay raises from 2004 through January 12, 2010, and her allegation that she received a "lump sum" raise in lieu of "increases" on January 1, 2010.

Culotta responds that she should be able to recover for discriminatory acts that occurred outside of the 300-day limitations period on the ground that such acts amount to a continuous

violation of federal anti-discrimination statutes.  As the United States Court of Appeals for the Fifth Circuit has stated with respect to the continuing violation doctrine:

> Although there is no definitive standard for what constitutes a continuing violation, the plaintiff seeking to invoke this doctrine must demonstrate more than a series of discrete discriminatory acts: "He must show an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action." *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998) (citations omitted). This court has identified at least three factors that may be considered in determining if a continuing violation exists: (1) Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? (2) Are the alleged acts recurring or more in the nature of an isolated work assignment or incident? (3) Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights? *Huckabay*, 142 F.3d at 239.
> . . .
>
> . . . This court's decision in *Huckabay* makes clear that a one-time employment event, including the failure to hire, promote, or train and dismals or demotions, is "the sort of discrete and salient event that should put the employee on notice that a cause of action has accrued." *Huckabay*, 142 F.3d at 240.

*Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 352 (5th Cir. 2001).  The Fifth Circuit has emphasized that the third factor is " perhaps of most importance." *Berry v. Bd. of Supervisors for La. State Univ. & Agr. and Mech. College*, 715 F.2d 971, 981 (5th Cir. 1983); *see also Safford v. St. Tammany Parish Fire Prot. Dist. No. 1,* No. Civ.A.02–0055, 2004 WL 32921, at *5-6 (E.D. La. Jan, 5 2004) (Vance, J.) (considering only the third factor in determining whether alleged discriminatory acts constituted a continuing violation).

As this Court previously found in *Culotta I*, the continuing violations doctrine does not apply to Culotta's claims under the federal discrimination statutes.  *See Culotta v. Sodexo Remote Sites P'ship*, No. 10-2946, 2011 WL 2144490, at *3 (E.D. La. May 31, 2011) (Africk,

6

J.). Culotta's allegations amount to discrimination in connection with a handful of promotions and demotions (i.e., her promotion to HR director in 2004, her position change in March 2008 to training and development director, and Goodwine's hire as senior HR director in July 2008), each of which constitute a discrete act. Each of these acts have a "degree of permanence" which should have triggered plaintiff's awareness of and duty to assert her rights. *Celestine*, 266 F.3d at 352. Accordingly, the continuing violation doctrine does not apply and Culotta's Title VII, ADEA, and ADA claims must be dismissed to the extent that they arise from acts of discrimination that occurred before January 12, 2010.

Sodexo also argues that Culotta's fraud claims are time-barred and must be dismissed. "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained." La. Civ. Code. art. 3492. Culotta filed her fraud claims on July 4, 2011. As a result, Culotta's fraud claims are time-barred to the extent that they arise from conduct occurring before July 4, 2010.

Culotta argues that she has stated a claim for a continuous tort based upon fraudulent conduct and misrepresentations that continued until her termination in September 2010. "When tortious conduct and resulting damages are of a continuing nature, prescription does not begin until the conduct causing the damages is abated." *First Nat'l Bank v. Smith*, 691 So. 2d 355, 358 (La. Ct. App. 2d Cir. 1997) (citing *Bustamento v. Tucker*, 607 So. 2d 532 (La. 1992); *S. Cent. Bell Tel. v. Texaco, Inc.*, 418 So. 2d 531 (La. 1982)). "A continuing tort is occasioned by continual unlawful acts and for there to be a continuing tort there must be a continuing duty owed to the plaintiff and a continuing breach of that duty by the defendant." *Crump v. Sabine River Auth.*, 737 So. 2d 720, 728 (La. 1999). "The principle of a continuing tort applies only when continuous conduct causes continuing damages." *Lee v. City of Shreveport*, 58 So. 3d 601,

605 (La. Ct. App. 2d Cir. 2011) (citing *Louisiana AG Credit, PCA v. Livestock Producers, Inc.*, 954 So. 2d 883 (La. Ct. App. 2d Cir. 2007)).

In order to determine whether the continuing tort doctrine applies, "[t]he court must look to the operating cause of the injury sued upon and determine whether it is a continuous one giving rise to successive damages, or whether it is discontinuous and terminates, even though the damage persists and may progressively worsen." *Lee*, 58 So.3d at 605 (citing *Hogg v. Chevron USA, Inc.*, 45 So.3d 991 (La. 2010)). The conduct must be committed "continuous[ly] on an almost daily basis, by the same actor, of the same nature, and [it] becomes tortious and actionable because of its continuous, cumulative, synergistic nature." *Gulf & Miss. River Transp. Co. v. Chevron Pipeline Co.*, No. 11-30443, 2011 WL 5042217, at *2 (5th Cir. Oct. 25, 2011) (quoting *Bustamento*, 607 So.2d at 542). The mere failure to remedy a wrong does not constitute a continuing tort. *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 885 (5th Cir. 2002).

Culotta has alleged a series of discrete and unrelated instances of fraud that she claims were committed in connection with her various promotions and demotions over the final six years of her career at Sodexo. The acts took place over the course of several years and Culotta has not alleged that the fraud was perpetrated continuously "on an almost daily basis." *See Lizotte v. Leblanc*, No. 11-30094, 2012 WL 28316, at *1 (5th Cir. Jan. 5, 2012). Moreover, each of the alleged acts of fraud involved different decision-makers that oversaw unrelated employment actions taken over the course of those years. Because the conduct was not alleged to have been committed "continuous[ly] on an almost daily basis, by the same actor, of the same nature," the continuing tort doctrine does not apply in this instance. *See Bustamento*, 607 So.2d

at 542. Accordingly, plaintiff's fraud claims must be dismissed to the extent that the alleged fraudulent misrepresentations occurred before July 4, 2010.

## II.  Fraud Claims

Sodexo also contends that Culotta has failed to allege sufficient facts to state a claim for fraudulent misrepresentation or fraud in the inducement. Louisiana law defines fraud as "a misrepresentation or a suppression of the truth made with the intent either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code Ann. art. 1953 (2008). "Fraud may also result from silence or inaction." *Id.* The elements of a claim for intentional misrepresentation and a claim for fraudulent inducement are the same: "(1) a misrepresentation of a material fact; (2) made with intent to deceive; and (3) causing justifiable reliance with resultant injury." *See Kadlec Medical Center v. Lakeview Anesthesia Assoc.*, 527 F.3d 412, 418 (5th Cir. 2008) (emphasis omitted) (intentional misrepresentation); *Henry v. Cisco Systems, Inc.*, 106 Fed. App'x 235, 239 (5th Cir. 2004) (fraudulent inducement).

Culotta alleges that Sodexo employees made several intentional misrepresentations that induced her to perform HR duties without proper compensation and, eventually, to force her to resign. Plaintiff alleges that (1) in April 2004, Gabbey misrepresented that Culotta would eventually receive the same pay as her younger male predecessors when she assumed the position of HR director; (2) in March 2008, Goodwine required that Culotta perform the duties of HR Director under a different title and without adequate pay; and (3) in September 2010, Woodruff misrepresented that Culotta's job required that she begin working offshore.

This Court has already held that plaintiff's fraud claims are time-barred to the extent that the alleged acts of fraud occurred before July 4, 2010. The only remaining claim of fraud relates to Culotta's allegation that Woodruff told her she would need to begin working offshore in

9

September 2010.  Culotta has alleged with particularity when and where Woodruff told her that she would need to begin working offshore and why she believes such statements were fraudulent.  Construing all facts and allegations in the light most favorable to plaintiff, the Court finds that plaintiff has stated a claim that meets the requirements of Rule 9(b) with respect to those statements.  Accordingly, the motion to dismiss Culotta's fraud claims, except as set forth previously in this opinion, is **DENIED**.

### III.  ADA Claims

Sodexo argues that Culotta's claims under the ADA must be dismissed because she failed to sufficiently allege that her fear of travelling over water amounts to a disability.  The ADA prohibits discrimination in employment against individuals with disabilities. 42 U.S.C. 12112(a).  To prevail on her claim of discrimination in violation of the ADA, Culotta must establish that (1) she has a disability, (2) she is qualified for the position in which she seeks employment, and (3) she was discriminated against because of her disability. *See Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 222 (5th Cir. 2011) (citing *Jenkins v. Cleco Power*, *LLC,* 487 F.3d 309, 315 (5th Cir. 2007)).

"As a threshold requirement in an ADA claim, the plaintiff must, of course, establish that he has a disability." *Griffin*, 661 F.3d at 222 (quoting *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 654 (5th Cir. 2003)).  A "disability" is defined under the ADA as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual . . . ." 42 U.S.C. § 12102(1)(A).  EEOC regulations define a physical or mental impairment as:

> (1) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular,

>reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or
>
>(2) Any mental or psychological disorder, such as an intellectual disability (formerly termed "mental retardation"), organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h).

"Simply having an impairment is insufficient to make one disabled under the statute; a plaintiff must also show that the impairment substantially limits a major life activity." *Garner v. Chevron Phillips Chem. Co.,* No. 10-138, 2011 WL 5967244, at *3 (S.D. Tex. Nov. 29, 2011). A "major life activity" includes functions such as "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

With respect to whether or not an impairment "substantially limits" a major life activity, the ADA Amendments Act of 2008 ("ADAAA") "directs that 'substantially limits' should not be as strictly construed as some courts have required in the past and should not require 'extensive analysis.'"[15] *Garner*, 2011 WL 5967244, at *4; *cf. Toyota Motor Manufacturing v. Williams,* 534 U.S. 184, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002) (superseded by the ADAAA); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999) (same). Even under the ADAAA, however, an impairment is not considered a disability unless "it substantially

---

[15] The ADAAA was enacted on September 25, 2008 and it became effective on January 1, 2009. *See* 42 U.S.C. § 12101, *et seq*. Because Culotta's claims are time-barred to the extent that they are predicated on any acts of discrimination that occurred before January 12, 2010, the ADAAA applies. "The ADAAA is principally aimed at reversing Supreme Court precedent perceived as improperly narrowing the scope of protection originally intended by drafters of the ADA." *Garner*, 2011 WL 5967244, at *4 (citing Louis P. DiLorenzo, *The Intersection of the FMLA and ADA–As Modified by NDAA, ADAAA and GINA,* 860 PLI/Lit 47, 83–84 (June 23, 2011); 29 C.F.R. § 1630.1(c)(4)).

limits the ability of an individual to perform a majority life activity *as compared to most people in the general population.*" See *Bratlik v. S. Huntington Union Free Sch. Dist.*, No. 10-10, 2012 WL 748748, at *4 (E.D.N.Y. Mar. 8, 2012) (emphasis in original) (quoting 29 C.F.R.2(j)(1)(ii)).

The EEOC regulations interpreting the ADAAA provide the following factors to consider when determining whether or not an individual is "substantially limited" in a major life activity:

> At all times taking into account the principles in paragraphs (j)(1)(i) through (ix) of this section, in determining whether an individual is substantially limited in a major life activity, it may be useful in appropriate cases to consider, as compared to most people in the general population, the condition under which the individual performs the major life activity; the manner in which the individual performs the major life activity; and/or the duration of time it takes the individual to perform the major life activity, or for which the individual can perform the major life activity. . . .

29 C.F.R. § 1630.2(j)(4)(i).[16] "Though 'substantially limits' is not meant to be a demanding standard, '[n]ot every impairment will constitute a disability within the meaning of this section.'"

---

[16] 29 C.F.R. § 1630.2(j)(1) provides the following rules of construction with respect to whether an impairment substantially limits a major life activity:

> (i) The term "substantially limits" shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. "Substantially limits" is not meant to be a demanding standard.
>
> (ii) An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.
>
> (iii) The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an impairment "substantially limits" a major life activity should not demand extensive analysis.
>
> (iv) The determination of whether an impairment substantially limits a major life activity requires an individualized assessment. However, in making this

*Koller v. Riley Riper Hollin & Colagreco*, No. 10-2933, 2012 WL 628009, at *5 (E.D. Pa. Feb. 28, 2012).

Culotta alleges that her clinical fear of traveling over water qualifies as a "disability" within the meaning of the ADA because it is an impairment that substantially limits her ability to engage in a major life activity, i.e., working. The Court finds that at this early stage of the proceedings, Culotta has sufficiently alleged that her fear of water qualifies as a mental impairment within the meaning of the ADA.

Even when taking into account the amendments to the ADA and the principles set forth in the EEOC regulations to the ADAAA, however, this Court does not find that Culotta has sufficiently alleged that her fear of travelling over water "substantially limited" her in the major life activity of working. *See* 29 C.F.R. § 1630.2(j)(1) and (4)(i). Despite her alleged inability to perform HR duties offshore, Culotta's allegations show that she was not only capable of working in general, but also that she declined to accept an alternative position as a contract worker that would not have required her to travel over water.[17] The allegations in the complaint fail to establish that Culotta's fear of water substantially limited her ability to perform a class of jobs or

---

assessment, the term "substantially limits" shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for "substantially limits" applied prior to the ADAAA.

(v) The comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population usually will not require scientific, medical, or statistical analysis. Nothing in this paragraph is intended, however, to prohibit the presentation of scientific, medical, or statistical evidence to make such a comparison where appropriate. . . .

[17] *See* R. Doc. No. 1-2, ¶¶ 111-12. Plaintiff alleges that after she refused to work offshore, "Plaintiff was then asked by Woodruff is [sic] she would take a 'consultant' job for a year. Plaintiff advised that she would not take a consultant job for a year because in a year she would not have a job and would not be any better off than she was presently."

a broad range of jobs in various classes as compared to most people,[18] which is a requirement that continues to apply even after the amendments to the ADA.  *See Allen v. SouthCrest Hosp.*, No. 11-5016, 2011 WL 6394472, at *7 (10th Cir. Dec. 21, 2011) (unpublished) ("Ms. Allen was required, even after the enactment of the ADAAA and the modified EEOC regulations, to demonstrate that she was substantially limited in performing a class of jobs or broad range of jobs in various classes as compared to most people with comparable training, skills, and abilities.") (citing "Substantially Limited in Working," Appendix to Part 1630–Interpretive Guidance on Title I of the Americans With Disabilities Act, 29 C.F.R. Pt. 1630, App.); *Azzam v. Baptist Healthcare Affiliates, Inc.*, No. 10-362, 2012 WL 28117, at *6 (W.D. Ky. Jan 5, 2012).

Nevertheless, "[e]ven if a plaintiff does not have an 'impairment that substantially limits one or more major life activities' as defined by § 12102(2)(A), he may claim the protection of the ADA if he is 'regarded as having such an impairment.'" *See Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 657 (5th Cir. 2003).  Under the ADAAA, an individual is regarded as having an impairment "if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A). To the extent that Culotta claims she was forced to resign because she was regarded as having a mental impairment that prevented her from working offshore, Culotta has sufficiently stated a claim upon which relief can be granted, "whether or not the impairment limits or is perceived to

---

[18] *See, e.g.*, *Anderson v. N.D. State Hosp.*, 232 F.3d 634 (8th Cir. 2000) (holding that an employee's irrational fear of snakes was not an impairment that substantially limited her ability to work); *Cameron v. Navistar Intern. Transp. Corp.*, 39 F. Supp 2d 1040 (N.D. Ill. 1998) (holding that  an employee's fear of suspended air tools was not an impairment that substantially limited his ability to work).

limit a major life activity." *See id.* Accordingly, the motion to dismiss Culotta's claims under the ADA, except as set forth herein, is **DENIED**.

## IV. Louisiana Wage Payment Act

Sodexo also moves to dismiss plaintiff's claims for past due wages as set forth in her amended complaint. The Louisiana Wage Payment Act ("LWPA") "creates liability for an employer who fails to timely pay wages owed to an employee after the employee voluntarily leaves employment[.]"[19] *Becht v. Morgan Bldg. & Spas, Inc.*, 843 So.2d 1109, 1112 (La. 2003). Pursuant to La. Rev. Stat. ann. § 23:632,

> Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

In order to recover pursuant to this statute, plaintiff must prove that "(1) wages were due and owing; (2) demand for payment was made where the employee was customarily paid; and (3) the employer did not pay upon demand." *Becht*, 843 So.2d at 1112. Culotta's claim under the

---

[19] Louisiana Revised Statutes 23:631(A)(1)(b) provides:

> Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of resignation, whichever occurs first.

15

LWPA is subject to the liberative prescription of three years provided in La. Civ. Code art. 3494.[20] *See Hudson v. Jackson Parish School Bd.*, 811 So. 2d 212, 215 (La. App. 2d Cir. 2002).

In her amended complaint, Culotta alleges that (1) she was qualified for the position of HR director despite the fact that she did not have a college degree, (2) Sodexo discriminated against her based on age and gender, and (3) Sodexo refused to pay her wages due in spite of amicable demand. Although this Court agrees with defendant that Culotta may not use the LWPA to resurrect her EPA claims or to "bootstrap" her time-barred discrimination claims, Culotta has sufficiently alleged that wages were due and owing and that Sodexo failed to pay upon demand. Whether or not Culotta is actually seeking compensation for "earned but unpaid" wages that were due at the time of discharge may be revealed during discovery. The motion to dismiss Culotta's claims under the LWPA is **DENIED**.

## *CONCLUSION*

For the foregoing reasons,

**IT IS ORDERED** that the motion to dismiss Culotta's claims under Title VII, the ADEA, and the ADA as time-barred is **GRANTED** and that such claims are **DISMISSED WITH PREJUDICE** to the extent that they arise from acts of discrimination that occurred before January 12, 2010.

---

[20] La. Civ. Code art. 3494 provides:

> The following actions are subject to a liberative prescription of three years:
>
> (1) An action for the recovery of compensation for services rendered, including payment of salaries, wages, commissions, tuition fees, professional fees, fees and emoluments of public officials, freight, passage, money, lodging, and board[.]

**IT IS FURTHER ORDERED** that the motion to dismiss Culotta's claims under the ADA for failure to state a claim upon which relief can be granted is **DENIED** to the extent that such claims are not time-barred.

**IT IS FURTHER ORDERED** that the motion to dismiss Culotta's fraud claims as time-barred is **GRANTED** and that such claims are **DISMISSED WITH PREJUDICE** to the extent that the alleged fraudulent misrepresentations occurred before July 4, 2010.

**IT IS FURTHER ORDERED** that the motion to dismiss Culotta's fraud claims for failure to state a claim upon which relief can be granted is **DENIED** to the extent that such claims are not time-barred.

**IT IS FURTHER ORDERED** that the motion to dismiss Culotta's LWPA claims for failure to state a claim upon which relief can be granted is **DENIED**.

New Orleans, Louisiana, March 28, 2012.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**